# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
January 7, 2003 Session

## STATE OF TENNESSEE v. DELBERT EUGENE OREY

**Direct Appeal from the Circuit Court for Carroll County**
**No. 01CR1769     Roy Morgan, Judge**

---

**No. W2002-00482-CCA-R3-CD  - Filed June 13, 2003**

---

The defendant, Delbert Eugene Orey, was convicted of DUI, third offense, and driving while license suspended, fifth offense, and was sentenced, respectively, to eleven months and twenty-nine days, with all but 180 days suspended, and six months, with all but forty-five days suspended, the sentences to be served concurrently.  On appeal, he argues that the evidence was insufficient to support his conviction for DUI, third offense, and that his sentence is excessive.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Delbert Eugene Orey.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

Officer Kim Barker, of the McKenzie Police Department, testified that on June 29, 2001, at approximately 7:30 p.m., he was "running radar" in an area with a speed limit of 35 miles per hour, and saw the defendant driving a white truck which he "clocked" at a speed of 47 miles per hour. The defendant's vehicle was stopped, and he "staggered" as he got out of it and was told to get back inside the truck. Officer Barker said that he smelled the odor of alcohol on the defendant, asking that he produce his driver's license as he instructed him to get out of his truck. The defendant produced instead a state identification card and, upon checking, Officer Barker determined that the defendant's license had been revoked.

The defendant was asked to perform a finger count test and "got his number mixed up." Officer Barker did not ask that he attempt other field sobriety tests because the ground was not level and the volume of traffic was high. The defendant told Barker that he had consumed some drinks at the Veterans of Foreign Wars ("VFW") club. Officer Barker then transported the defendant to the Carroll County Jail. At the jail, the defendant participated in a field sobriety test, but refused to take the Breathalyzer. Officer Barker denied on cross-examination that the defendant offered to take a blood-alcohol test rather than using the Breathalyzer or telling the defendant that he did not have time to do so.

Officer James Bratton, also of the McKenzie Police Department, testified that he followed Officer Barker as he stopped the defendant's truck. He said that the defendant "kind of staggered out into the road" when first getting out of his truck. He said that he believed the defendant to be "really highly intoxicated." Melissa Sydes, a jailer at the Carroll County Jail, was on duty when the defendant was brought in and described him as being unsteady on his feet, with "slightly slurred" speech. She detected the smell of beer on him.

The defendant testified that he had worked the day of his arrest, laying carpet until about 3:30 p.m., when he went with Larry Sawyers, a coworker, to the VFW club. He stayed there for forty-five to sixty minutes, consuming two Coors Lights, some "finger food," a tuna sandwich, pretzels, and peanuts. They then went in the defendant's truck to the defendant's house. At his home, the defendant was at his computer for about an hour, leaving then to get something to eat at a Sonic Drive-In. After leaving the drive-in, he was stopped by Officer Barker. He said that, upon getting out of his truck, he had seemed to stumble because he had not gotten his foot on the truck's running board. He said Officer Barker told him he did "pretty good" on the finger count test, and he believed he did "real good" on the test. As Officer Barker was transporting him to the jail, the defendant asked to be "cut . . . some slack" and was told by Barker, "[M]y cousin got arrested for D.U.I. and I could not help him, what makes you think I would help you[?]" Responding to the defendant's request for a blood test, Barker said he did not have "time to play those games." The defendant denied seeing Jailer Sydes at the jail. He said that prior injuries affect the way that he walks and stands. On cross-examination, the defendant said that, according to the radar which he saw in Officer Barker's car, his speed was 42, not 47.

Michael Jeffery Beasley testified that he had employed the defendant to install carpet on the day of his arrest and the job required the defendant to use his knees to stretch and install the carpet. The defendant complained to Beasley that he was having problems with his knees.

Larry Sawyers, a carpenter and coworker of the defendant, said they had worked for Mr. Beasley the day of the defendant's arrest. They had left work at 3:30 p.m. and gone to the VFW club, where they each had two beers and ate some food. He said that the defendant's legs and feet swelled because of his work and that the defendant did not appear to be intoxicated. The defendant was from California, and his slurred words were "just his speech." Sawyers did not see the defendant after 5:00 p.m. on the day the defendant was arrested.

David Pratt said that he, also, had worked for Mr. Beasley the day of the defendant's arrest. The defendant did not smell of alcohol at 7:00 a.m. when Pratt first saw him, did not drink beer at lunch, or seem intoxicated then. Pratt had picked up paychecks for himself, the defendant, and Larry Sawyers. He was at the defendant's house for an hour and a half to two hours, leaving while the defendant was still there. He later saw the defendant at the Sonic Drive-In.

Lynn Harris said that, on the day of the defendant's arrest, he had gone to the defendant's house at 5:30 p.m. to work on the defendant's computer. No one, including the defendant, was drinking alcohol. When Harris left at approximately 6:45 p.m., the defendant did not have an odor of alcohol about him.

Marcus Chapman, a neighbor of the defendant, said that he had been at the defendant's house between 5:00 and 5:30 p.m. the evening of the arrest and did not notice any smell of alcohol on the defendant and did not believe that he had been drinking. The defendant did not appear to be walking in an unusual way.

Testifying as a rebuttal witness, Officer Barker testified that, while on patrol, he had seen the defendant's truck at 6:00 p.m. at the VFW club the night of the arrest. As the defendant was being transported to the jail, he kept repeating that he was to do some work for a judge.

## ANALYSIS

### I. Sufficiency of the Evidence

On appeal, the defendant argues that the evidence was insufficient to sustain his conviction for DUI, third offense:

> In the instant case, Police officers testified . . . that they formed an opinion as to Defendant's intoxication. However, Defendant presented factual witnesses, that presented a legal theory explaining Defendant's actions, based upon physical tendencies and limitations and impairments, which explained his actions, all of which did not coincide with the theory of intoxication or driving while impaired.
>
> The State's video tape of the Defendant shows the Defendant accurately and successfully performing field sobriety tests, and communicating with officers, unimpaired. Also, the six (6) fact witnesses, document that the Defendant factually did not have alcohol to his impairment.

Thus, according to the defendant's argument, by this proof, he "developed a second possibility, or a lesser probability" entitling him to a finding of not guilty as to the DUI conviction.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We respectfully disagree with the defendant's argument that he was entitled to a verdict of not guilty as to the DUI charge because he presented six witnesses, while the State presented only three. By its verdict, the jury determined that the State had proven the defendant's guilt of DUI, third offense, and the record supports this determination. Implicit in the jury's verdict was its finding that the State's witnesses, testifying that the defendant was intoxicated as he operated his truck, were credible. Accordingly, we conclude that the evidence was sufficient to sustain the conviction for DUI, third offense.

## II. Sentencing

The defendant argues that the trial court erred in sentencing him as to his conviction for DUI, third offense, saying that his "sentence for prior convictions was not properly authenticated, and [he] was excessively sentenced compared to other DUI offenders" and that "the court failed to consider alternative sentencing, besides incarceration."

The defendant was sentenced to eleven months and twenty-nine days for the DUI, third offense conviction, with all but 180 days suspended. Tennessee Code Annotated section 55-10-403(a)(1) requires that the defendant be sentenced to a minimum period of confinement of 120 days. No transcript of the sentencing hearing is contained in the record on appeal, which precludes our considering whether the court erred in sentencing the defendant for the DUI conviction. Tenn. R. App. P. 24(b); State v. Draper, 800 S.W.2d 489, 492-93 (Tenn. Crim. App. 1990).

As to the State's proof of the defendant's California convictions for DUI, he argues that the evidence was insufficient because no showing was made that he was represented by or waived counsel; that he waived his rights against self-incrimination, to confront witnesses, or to a jury trial; the effects of a plea of guilty; the future uses of a DUI conviction; an explanation of the charges; that the charges could not be utilized for enhancement purposes because they were from another state or that the DUI laws of California are similar to those of Tennessee; that the "statutory/constitutional prerequisites were not shown"; that the Boykin requirements were not proven; and that the DUI enhancement statute "is procedurally and substantively unconstitutional."

The record on appeal does not contain a transcript of the portion of the defendant's trial which resulted in his being convicted for DUI, third offense. As to how the State might have proved the prior convictions, we have only certain documents in the technical record, following a page which bears the handwritten notation: "State # 1769 Exhibits Orey." This page bears the stamped number 00019, and the next two pages appear to be computer printouts from the California Department of Motor Vehicles, followed by a "Municipal/Superior Court County of Santa Cruz, State of California Probation/Conditional Sentence Order," which appears to be a certified copy of an order showing that the defendant was convicted on July 23, 1998, of driving a motor vehicle while having 0.08% or more of alcohol in his blood. Additionally, the technical record contains a second Probation/Conditional Sentence Order of the Municipal/Superior Court of Santa Cruz County, California, finding the defendant guilty on March 29, 1999, of the felony of driving a vehicle while under the influence of an alcoholic beverage and a drug and of resisting arrest. A minute order as to this last arrest shows that the defendant was represented at the preliminary hearing, which occurred the same day as his plea of guilty, by the public defender. We note that none of the California documents included in the record bear a stamp showing that they were trial exhibits, nor are references made to them in the transcript which covers only the first phase of the trial. Thus, we cannot determine from the record how the State went about proving the prior convictions, whether the California documents in the technical record were exhibits at the second phase of the trial or whether other documents were used as well. In short, we are asked to conclude that the State failed to prove that the defendant had two prior valid DUI convictions when the record does not show how the prosecution went about trying to do so. Accordingly, this claim is waived. See Tenn. R. App. P. 27(a)(7); State v. Eberhardt, 659 S.W.2d 807, 811 (Tenn. Crim. App. 1983).

Additionally, the defendant asserts that the California DUI convictions cannot be utilized for enhancement purposes in Tennessee because they are not "substantially similar," but he did not provide a copy of the California statute or explain the differences and argues, as well, that the Tennessee DUI statute is unconstitutional. We conclude that these claims are waived.

The defendant next argues that the Tennessee DUI statutes preclude for enhancement purposes a conviction outside the state. However, this court has held to the contrary. See State v. Rea, 865 S.W.2d 923, 924 (Tenn. Crim. App. 1992).

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE